IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JULIE LANE and RICHARD LANE | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 19–cv-674-SMY |
| | ) | |
| | ) | |
| DIRECT ENERGY SERVICES, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs Julie and Richard Lane, individually and on behalf of all others similarly situated, filed this putative class action against Defendant Direct Energy Services, LLC ("Direct Energy") alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment (Doc. 16).  The case is now before the Court for consideration of Direct Energy's Motion to Dismiss (Doc. 21) to which Plaintiffs responded (Doc. 32).  For the following reasons, the Motion is **GRANTED**.

### Background

Plaintiffs allege as follows in the Amended Complaint:  Illinois deregulated the market for retail residential electricity supply in 2002.  As a result, the Illinois electricity industry is open to competition and consumers may choose their energy supplier.  The new energy suppliers, who compete against local utilities, are known as alternative retail electric suppliers ("ARES").  When a customer switches to an ARES, the ARES supplies the electricity, but the local utility continues

to deliver the electricity and to bill the customer for both the supply and delivery costs. The utility calculates the supply cost for an ARES customer based on the number of kilowatt hours used multiplied by the supply rate charged by the ARES. Direct Energy is an ARES that supplies electricity to Illinois consumers.

Plaintiffs entered into a contract with Direct Energy for residential electricity services in June 2016. At the time, Direct Energy offered to provide Plaintiffs a fixed rate followed by a market-based variable rate for electricity services. Direct Energy's fixed–rate offer was lower than Plaintiffs' local utility's (Ameren) then-current rate. Plaintiffs were provided with Direct Energy's standard and uniform Illinois Residential & Small Commercial Terms and Conditions ("Terms and Conditions") which provided that, upon the expiration of the initial fixed rate, Plaintiffs would be automatically transferred to a variable rate plan governed by the following terms:

> Upon completion of the Initial Term, this Agreement will automatically renew on a month-to-month basis ("Renewal Period") at a variable price per kWh for electricity and/or per Therm for natural gas with no early cancellation fee or device cost recovery fee…While taking service on a month-to-month basis, Direct Energy will charge you at a variable price per kWh and/or Therm based upon generally prevailing market prices for electricity and/or natural gas for the applicable period, plus an adder, determined solely by Direct Energy in its discretion. Your variable price will include ancillary charges, cost of capacity where applicable, generation, losses and other miscellaneous charges, and will exclude taxes and regulated charges from the utility…

Plaintiffs allowed the fixed-rate term to expire without renewing or terminating the plan and Direct Energy charged them month to month variable rates from mid-April 2017 through August 2018.

Plaintiffs reasonably expected that Direct Energy's variable rates for electricity would reflect prevailing market prices – the rates Direct Energy's competitors charge and wholesale costs for purchasing electricity, and fluctuations thereof. However, Direct Energy's variable rate was not based on prevailing market rates and was consistently significantly higher than Ameren's rates. Between May 2017 and August 2018, Direct Energy's rate was higher than Ameren's rate every

month.  On average, Direct Energy's variable rates were 216.5% higher than Ameren's rates and was more than double Ameren's rate during 12 of the 16 months Plaintiffs were on Direct Energy's variable rate.  In 2017, Direct Energy's rates were higher than approximately 81% of the 58 ARESs providing residential electricity supply services in Illinois.

Direct Energy's statements and omissions to consumers with respect to the rates it will charge are materially misleading because it does not charge rates based on market-related factors and fails to disclose that its rates are substantially higher than rates based on market-related factors. Direct Energy does this knowing that the only reason a reasonable consumer would switch from a local utility to Direct Energy is for the potential to pay market-based rates.  Reasonable consumers would not have enrolled in Direct Energy's plan had they known the rates would be higher than those charged by the local utilities and, therefore, suffered injuries caused by Direct Energy's misrepresentations and omissions by paying the higher rates.

Plaintiffs assert state law claims for violation of ICFA, breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. Direct Energy seeks to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) on numerous grounds, including: (1) Plaintiffs fail to allege deceptive or unfair conduct under the ICFA; (2) there is no violation of the advertising rule under the ICFA; (3) Plaintiffs fail to allege a breach of contract; and (4) Plaintiffs' unjust enrichment claim is barred by the contract.

<u>Discussion</u>

To survive a Rule 12(b)(6) motion to dismiss, a Complaint must plead more than conclusions; it must allege sufficient facts that make the plaintiff's claim plausible.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678, (2009); *see also West Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).  "Plausibility is not a synonym for 'probability' in this context, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Schumacher*, 844 F.3d at 675 (citations omitted).  Under this standard, a plaintiff who seeks to survive a motion to dismiss must "plead some facts that suggest a right to relief that is beyond the speculative level."  *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009) (internal quotation marks omitted).

To satisfy Rule 9(b), a party pleading fraud must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case."  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

### Count I – Illinois Consumer Fraud Act ("ICFA")

The Illinois Consumer Fraud Act "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices."  *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citation and internal quotation marks omitted).  A plaintiff may allege either deceptive or unfair conduct (or both) under ICFA.  *Siegel*, 612 F.3d at 935; *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012).

To state a claim for deceptive practice under the ICFA, a plaintiff must allege: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) the damages were proximately caused by the defendant's deception.  *Siegel*, 612 F.3d at 934–35.  "[W]hen analyzing a claim under the ICFA,

the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortgage Co.*, 396 F.3d 869, 884 (7th Cir. 2005). An act will not be said to be deceptive when the plaintiff is explicitly alerted to the complained of result. *See id.* Additionally, an ICFA claim for deceptive business practices must satisfy the heightened particularity pleading requirement of Rule 9(b). *Greenberger v. GEICO Gen. Ins. Co.,* 631 F.3d 392, 399 (7th Cir. 2011).

Plaintiffs' ICFA claim for deceptive practices rests on their allegation that the language Direct Energy uses in its Terms and Conditions and renewal letters falsely and deceptively creates the impression that its variable rate would be based on wholesale costs of electricity and competitors' rates. In recognition of Rule 9's requirements, they include specific paragraphs in the Amended Complaint describing the "who, what, when, where, and how" of the alleged fraud:

- WHO: Direct Energy…makes material misrepresentations and omissions of fact in the marketing, advertising, promotion, and sale of electricity.

- WHAT: Direct Energy makes material misrepresentations and omissions by marketing, advertising, promoting, and selling its variable rate as a competitively priced rate that would be "based upon generally prevailing market prices for electricity." The language that Direct Energy uses in its Terms and Conditions and renewal letters falsely and deceptively creates the impression that its variable rate would be based on wholesale costs of electricity and competitors' rates…Direct Energy knows its representation that the variable rate is competitive and based on prevailing market prices is false because it does not meaningfully consider wholesale prices or the rates charged by utilities or other ARESs when it sets the variable rate.

- WHERE: Direct Energy makes its material misrepresentations and omissions in its standard Contract Summary and Terms and Conditions, which constitute a solicitation during the rescission period, and in Direct Energy's standard renewal notice, all of which were received by Plaintiffs and upon which Direct Energy intended Plaintiffs to rely.

- WHEN: Direct Energy made the material misrepresentations and omissions when it solicited the Lanes in or around June of 2016 by providing them with its deceptive standard Terms and Conditions, and again when it sent the Lanes its standard renewal notice guaranteeing competitively priced rates.

- HOW: Direct Energy makes material misrepresentations and fails to disclose material facts concerning its variable rate when marketing, advertising, promoting, and selling its electricity services by representing that its variable rate is a competitively-priced rate that will be "based upon generally prevailing market prices for electricity in the PJM market for Commonwealth Edison Company customers or the MISO market for Ameren customers; at the Electric Utility load zone for the applicable period." (Doc. 16, ¶¶ 64-69).

While these allegations satisfy Rule 9, they are insufficient to support an ICFA deceptive practice claim. A plaintiff asserting such a claim in a contractual setting must allege unfair and deceptive conduct separate and distinct from the alleged breach of a contractual promise – Plaintiffs fail to do so. Rather, they essentially allege Direct Energy violated the ICFA by deceiving them through material misrepresentations and omissions in the contract. *See*, *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 400 (7th Cir. 2011); *see also Avery v. State Farm Mutual Auto. Ins. Co.*, 835 N.E. 2d 801, 844 (2005) (A deceptive practice "involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract").

Turning to Plaintiffs' ICFA unfair conduct claim, to determine whether a business practice may be deemed unfair, courts consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (citation and internal quotation marks omitted). Whether a practice is immoral, unethical, oppressive, or unscrupulous depends on whether it has left the consumer with little choice but to submit to it. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 610 (7th Cir. 2013).

Here, Plaintiffs allege that Direct Energy's "price-gouging scheme" offends public policy because the purpose of deregulation is to allow ARES to offer competitive rates to benefit

consumers.  They do not, however, allege a practice that violates a standard of conduct articulated in an existing statute or common law doctrine.  As the Supreme Court of Illinois instructs, "charging an unconscionably high price generally is insufficient to establish a claim of unfairness." *Robinson,* 775 N.E.2d 951. Moreover, Plaintiffs' contract with Direct Energy afforded them an alternative; they could have avoided paying the variable rate by terminating the contract at any time with no cancellation fee.  As such, Plaintiffs' Amended Complaint fails to state a claim for deceptive or unfair practice under the ICFA.

### Count II – ICFA § 505/2GG Advertising Rule

Plaintiffs allege that Direct Energy's "Terms and Conditions" is an advertisement which violates the ICFA's Advertising Rule for electricity suppliers.  Section 505/2GG of the Act provides:

> Any advertisement for electric services that list rates shall clearly and conspicuously disclose all associated costs for such service, including but not limited to, access fees and service fees.

Under the ICFA, "advertisement" includes the attempt by publication to induce any person to enter into an obligation when there is none.  But neither Direct Energy's "Terms and Conditions" nor renewal letter can be reasonably read as an attempt to induce Plaintiffs to enter into an obligation. Instead, both were sent to Plaintiffs to formalize and reflect an agreement that had already been reached.  Plaintiffs therefore fail to state a colorable claim for violation of ICFA's Advertising Rule.

### Count III – Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing

Plaintiffs' allegations of breach of contract are similar to those raised by the plaintiff in *Sevugan v. Direct Energy Services, LLC,* 931 F.3d 610, 612 (7th Cir. 2019).  That case also involved a contract between Direct Energy and a consumer which stated that the ARES would

charge a variable rate based on "prevailing market prices for electricity ... plus an adder, determined solely by [the supplier] in its discretion." *Sevugan,* 931 F.3d at 613.  The Seventh Circuit Court of Appeals, noting rates charged by the regulated utility was not a proper comparison because the point of deregulation was to permit the market, not state regulators, to determine rates, found that neither of the plaintiff's comparators participated in the general market for electricity, and thus could not be a "gauge [of] market price." *Id.* at 615-616.  The Court went on to conclude that the plaintiff's claim that Direct Energy did not charge rates commensurate with the utility company's or with the wholesale price failed to state a breach of contract claim; the parties' contract did not require Direct Energy to charge such rates, and without any information about valid market comparators, such as other alternative retail energy suppliers, the plaintiff's breach of contract claim was speculative and implausible. *Id.* at 616–17.

As was the case in *Sevugan*, the claim asserted in Plaintiffs' Amended Complaint relies on a comparator the Seventh Circuit has found not valid for purposes of determining prevailing market prices – Ameren.  Nor can Plaintiffs use wholesale prices as comparisons because they it "[are] the price to energy companies, not the consumer."  As individual customers, Plaintiffs could not go out and purchase electricity at the PJM wholesale rate, regardless of who supplied them with electricity.  Finally, Plaintiffs' allegation that Direct Energy's prices are substantially higher than other ARESs is conclusory and insufficient to support a claim.  Thus, Plaintiff's Amended Complaint fails to state a breach of contract claim.

To state a claim for breach of good faith and fair dealing, the allegations must suggest that "the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith...." *LaSalle Bank Nat'l Assoc. v. Paramount Properties*, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008) (internal citation omitted).

However, it has long been established under Illinois law that breach of good faith and fair dealing cannot be an independent cause of action. *See APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002) (citing *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126 (2001)). Therefore, Plaintiffs' breach of good faith and fair dealing claim will also be dismissed.

### Unjust Enrichment (Count IV)

Under Illinois law, unjust enrichment "is not a separate cause of action that, standing alone, would justify an action for recovery." *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190 (Ill. App. Ct. 2008). And, a claim for unjust enrichment is not actionable where, as here, the parties have entered into a contract which governs the dispute. *See Prima Tek II, L.L.C. v. Klerk's Plastic Indus.*, 525 F.3d 533, 541 (7th Cir. 2008). Plaintiffs recognize that they cannot plead an unjust enrichment claim based on the same allegations as their claims for breach of contract, but maintain that they assert the claim in the alternative. While a plaintiff may plead such a claim in the alternative where the existence of a valid contract is questioned, if (as is true in this case) there is no dispute over the existence of a contract, a claim for unjust enrichment necessarily fails. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo,* 349 F.3d 376, 397 (7th Cir. 2003) ("a plaintiff may not pursue a quasi-contractual claim where there is an enforceable, express contract between the parties").

### Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. Plaintiffs' First Amended Complaint is **DISMISSED without prejudice**. All pending motions are **TERMINATED as MOOT**.

**IT IS SO ORDERED.**

**DATED:  June 15, 2020**

**STACI M. YANDLE**
**United States District Judge**