IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JULIE LANE and RICHARD LANE, | |
| Plaintiffs, | |
| v. | Case No. 19-CV-00674-SPM |
| DIRECT ENERGY SERVICES, LLC, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Leave to File a Proposed Second Amended Complaint ("PSAC") and a memorandum in support filed by Plaintiffs Julie Lane and Richard Lane (Docs. 44, 45). The Lanes seek leave to amend their complaint after this Court granted Defendant Direct Energy Services, LLC's ("DES") dismissal of the claims in its First Amended Complaint ("FAC") (Doc. 16) under Federal Rule of Civil Procedure 12(b)(6) (Doc. 43). For the reasons set forth below, the Court grants in part and denies in part the Motion.

FACTUAL & PROCEDURAL BACKGROUND

**I.  The FAC**

In September 2019, the Lanes filed their FAC as a matter of course under FED. R. CIV. P. 15 (Doc. 16). The following summary is based on the facts, taken as true, alleged in the FAC, which focuses on Illinois' Electric Service Customer Choice and Rate Relief Law of 1997 ("the Act").

Under Illinois' deregulated market for retail residential electricity supply, the electricity industry opened to competition and consumers may choose their energy supplier (Doc. 16, p. 3). The new energy suppliers are known as alternative retail electric suppliers ("ARES") (*Id*.). The Act states that "[a]ll consumers must benefit in an equitable and timely fashion from the lower costs for electricity that result from retail and wholesale competition and receive sufficient information to make informed choices among suppliers and services." (Doc. 16, p. 4) (citing 220 Ill. Comp. Stat. Ann. 5/16-101A).

The Lanes entered a contract with DES for residential electricity services in June 2016 (*Id*. at 2). At the time, DES offered to provide the Lanes with a fixed rate followed by a market-based variable rate for electricity services (*Id*. at 8). DES's fixed rate offer was lower than the Lanes' local utility rate (*Id*.).

The Lanes were provided with DES's standard and uniform Illinois Residential & Small Commercial Terms and Conditions ("Terms and Conditions") which provided that, upon the expiration of the initial fixed rate, they would be automatically transferred to a variable rate plan "at a variable price per kWh based upon generally prevailing market prices for electricity in the PJM market for Commonwealth Edison Company customers or the MISO market for Ameren customers at the Electric Utility load zone for the applicable period, plus an adder, determined solely by DES in its discretion (*Id*. at 9)." The Terms and Conditions also provided the Lanes with a rescissionary period to rescind the contract prior to its commencement should they not agree to its terms (*Id*.). During that period, the contract served as a solicitation

where DES identified the basis upon which the promised market-based variable rate would be determined (*Id.*).

The Lanes allowed the fixed rate term to expire without renewing or terminating the plan and DES charged them month to month variable rates from mid-April 2017 through August 2018 (*Id.* at 11-12). They reasonably expected that DES's variable rates for electricity would reflect prevailing market prices – the rates DES's competitors charge and wholesale costs for purchasing electricity, and fluctuations thereof (*Id.* at 10). However, DES's variable rate was not based on prevailing market rates and was consistently significantly higher than competitor's rates (*Id.*). Between May 2017 and August 2018, DES's rate was higher than Ameren's (the Lanes' former utility supplier) rate every month (*Id.* at 12). On average, DES's variable rates were 216.5% higher than Ameren's rates and were more than double Ameren's rates during 12 of the 16 months the Lanes were on DES's variable rate (*Id.*). In 2017, DES's rates were higher than approximately 81% of the 58 ARESs providing residential electricity supply services in Illinois (*Id.* at 14).

DES's statements and omissions to consumers with respect to the rates it will charge are materially misleading because it does not charge rates based on market-related factors and fails to disclose that its rates are substantially higher than rates charged by local utilities (*Id.* at 18, 30). DES does this knowing that the only reason a reasonable consumer would switch from a local utility to DES is for the potential price savings (*Id.* at 18). The Lanes and the Class members would not have enrolled in DES's plan had they known the rates would be higher than those charged by the

local utilities and, therefore, suffered injuries caused by DES's misrepresentations and omissions by paying the higher rates (*Id.* at 26, 30).

The Lanes alleged claims against DES for violation of Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment (*Id.* at 24-32).

## II. United States District Judge Staci M. Yandle's Order[1]

In October 2019, DES filed its Motion to Dismiss (Doc. 21). The Lanes subsequently filed their memorandum in opposition to the motion (Doc. 32).

Judge Yandle then filed her order, dismissing all the Lanes' claims without prejudice (Doc. 43, p. 9). Regarding the Lanes' ICFA claim in Count I for deceptive practices, Judge Yandle found that while the Lanes satisfied the FED. R. CIV. P. 9(b) pleading standard for fraud, they did not allege deceptive conduct by DES that was different from the conduct alleged in their breach of contract claim (Doc. 43, p. 6). Judge Yandle pointed out that the Lanes basically alleged that DES deceived them through material misrepresentations and omissions related to the contract, which does not hold water as a deceptive practices claim because that claim cannot be based on the parties' contract (*Id.*). So too went the Lanes' ICFA unfair conduct claim in Count I because they did not allege that DES's rates violated an existing statute or the common law and, therefore did not offend a public policy (*Id.* at 6-7). Judge Yandle also found that DES's pricing practices were not immoral, unethical, oppressive, or unscrupulous because the Lanes were free to terminate their contract with DES at

---

[1] Under Administrative Order No. 277, this case was transferred to the undersigned in order to reapportion cases equally among the District Judges in this Court (Doc. 54).

any time without paying a cancellation fee (*Id.*). Judge Yandle further dismissed the Lanes' ICFA advertising rule claim in Count II, concluding that DES's Terms and Conditions and renewal letter could not reasonably be read as an attempt to induce the Lanes into an obligation where there was none, particularly because these two items formalized the agreement that had already been reached between the parties (*Id.* at 7).

Next, in relation to the Lanes' Count III breach of contract claim against DES for not charging market-based variable rates according to the contract terms, Judge Yandle determined the breach of contract claims raised in *Sevugan v. Direct Energy Services, LLC*, 931 F.3d 610 (7th Cir. 2019) and the breach of contract claim in this case were remarkably similar (*Id.* at 7). Using *Sevugan*, Judge Yandle found that the Lanes used the flawed comparators of a local utility and wholesale prices to support their case for breach of contract with DES when *Sevugan* held that those comparators were not appropriate gauges for market prices used by ARES (*Id.* at 8). Without valid market comparators like other ARES rates, Judge Yandle decided that the Lanes' allegation that DES's prices were substantially higher than other ARES prices was conclusory and insufficient to support the breach claim (*Id.*). Judge Yandle further found that the Lanes' Count III breach of good faith and fair dealing claim, along with their Count IV unjust enrichment claim, were not legitimate separate causes of action under Illinois law because the former was a redundant extension of the breach of contract claim and the latter was not available because the conduct at issue was controlled by the contract (*Id.* at 8-9).

## LEGAL STANDARD

FED. R. CIV. P. 15(a) provides that a party may amend a pleading, and that leave to amend should be freely given when justice so requires. "Leave to amend need not be granted . . . if it is clear that any amendment would be futile." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). "District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *Gandhi v. Sitara Capital Mgmt.*, LLC, 721 F.3d 865, 869 (7th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ANALYSIS

### I.    Contract-Related Claims (Count III)[2]

To state a claim for breach of contract under Illinois law, a plaintiff must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan*, 931 F.3d at 614 (citing *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)).

---

[2] Because the Lanes have opted to not include an unjust enrichment claim in their PSAC, the Court will not address the sufficiency of that claim (Doc. 45, p. 2).

In her opinion, Judge Yandle found that a breach did not occur as the Lanes pleaded because they used the flawed comparators of a local utility and wholesale prices to support their case for the breach with DES when *Sevugan* held that those comparators were not appropriate gauges for market prices used by ARES (Doc. 43, p. 8). Without valid market comparators like other ARES rates, Judge Yandle decided the Lanes' allegation that DES's prices were substantially higher than other ARES prices was conclusory and insufficient to support the breach claim (*Id.*). Now, the Lanes propose adding allegations sourced from the U.S. Energy Information Administration (EIA) that they claim show that DES's rates are substantially higher than other ARES rates in the market (Doc. 45, p. 4-5). One of the proposed amendments, for example, alleges that "[i]n 2017, [DES]'s average rates were higher than approximately 81% of ARESs and were the highest of the seven largest ARESs in the state" (*Id.* at 5). The Lanes go on to claim that their average variable rate in 2017 of $0.1126 per kilowatt hour was 156% of the average rate among DES's primary competitors in that year, local utilities not included (*Id.*) Curiously, the Lanes also propose amendments that attempt to argue that Ameren's rate is an appropriate comparator (*Id.* at 6-7).[3]

The Lanes do add more allegations that contain figures from the EIA, but those figures lead to a problem, which the Lanes identify in their own motion. The EIA data provides for each ARES an average rate for the year, so it includes both fixed and variable rates. While *Sevugan* does not expressly conclude that variable rates of other

---

[3] Since this Court and *Sevugan* have already addressed this argument, the Court will not address it again here.

ARES are the valid comparator, it would seem improper to use those averaged rates of other ARES to compare to the Lanes' variable rate.

Placing that issue aside, the central problem is that the Lanes' contract with DES includes an adder, which is another variable in addition to the prevailing market price when determining the variable rate for consumers. The Terms and Conditions of the contract allowed DES to further base its rate on this discretionary component, completely unrelated to any market rates or wholesale prices. The Lanes' motion and amendments entirely ignore the discretionary component of the rate calculation and what effect it may have had on their variable rate. This discretionary component forecloses relief on the Lanes' breach claim against DES alleging that it did not charge market-based variable rates according to the contract. Simply put, because of the discretionary component, no amount of additional pleading will permit this cause of action to proceed under Illinois law. Therefore, the Lanes' claim for breach of contract in Count III is dismissed with prejudice.

Additionally, "under Illinois law the covenant of good faith and fair dealing is not an independent source of duties for the parties to a contract." *Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 792 (7th Cir. 1995) (citing *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1443 (7th Cir. 1992)). "'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved by the parties." *Id.* (quoting *Kham & Nate's Shoes No. 2 v. First Bank of Whiting,* 908 F.2d 1351 (7th Cir. 1990)). An alleged violation of the covenant

does not give rise to an independent source of obligations and, thus, cannot form the basis for an independent tort action. *See Wolf v. Fed. Republic of Germany*, 95 F.3d 536, 543 (7th Cir. 1996) (citations omitted). In a word, Illinois law does not recognize this cause of action, so relief is foreclosed and the Lanes' claim for breach of implied covenant of good faith and fair dealing in Count III is also dismissed with prejudice.

## II.     ICFA Claims (Counts I and II)

To state a claim under ICFA, a plaintiff must allege: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) the damages were proximately caused by the defendant's deception." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010).

In her opinion, Judge Yandle found that while the Lanes satisfied FED. R. CIV. P. 9(b) pleading standard for fraud, they did not allege deceptive conduct by DES that was different from the conduct alleged in their breach of contract claim (Doc. 43, p. 6). Judge Yandle pointed out that the Lanes basically alleged that DES deceived them through material misrepresentations and omissions related to the Terms and Conditions, which does not suffice as a deceptive practices claim because they cannot base their ICFA claims on the parties' contract (*Id.*). In response, the Lanes propose adding language that the representations made in the contract that the variable rate would be market-based were proffered for the purpose of inducing them to accept DES's variable rate following the expiration of the fixed term (Doc. 45, p. 8). The

Lanes also propose to add that since DES's representations were made during the rescissionary period, they were a solicitation since the Lanes were no longer under a fixed rate term and had not transferred to the variable rate (Doc. 45, p. 8). They use this argument for their advertising rule claim in Count II as well. (*Id.*).

The Lanes seemingly imply that this rescissionary period created some sort of legal magic where they were no longer under contract with DES until the variable rate transfer occurred, making the market-based rate claim in the Terms and Conditions a solicitation outside of the contract. But looking at the Lanes' own pleadings, the Lanes were still under a contract according to the Terms and Conditions through the rescissionary period. The Lanes even quote pieces of the Terms and Conditions that specifically lay out the rescissionary period and market-based variable rate. As Judge Yandle stated, and as the Court still finds today, the Lanes have not alleged deceptive conduct separate and distinct from the alleged breach of contractual promise, so their proposed amendments for the deceptive practices claim in Count I and advertising rule claim in Count II are futile and the proposed amendments are denied without prejudice. The Lanes may seek leave to amend if they can state an ICFA claim for deceptive practices or a violation of the advertising rule under these parameters, however, an accumulation of requests for leave to amend may lead to more pronounced futility and a dismissal with prejudice.

Next, the Lanes' claim unfairness, alleging a price gouging scheme that offends public policy. To state a claim under ICFA for unfairness, a plaintiff must allege the practice: (1) offends public policy; (2) is immoral, unethical, oppressive, or

unscrupulous; or (3) causes substantial injury to consumers. *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014). "The Illinois Supreme Court has confirmed that 'all three of the criteria . . . do not need to be satisfied to support a finding of unfairness.'" *Id.* (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002)).

Judge Yandle decided that the Lanes did not allege that DES's rates violated an existing statute or the common law and, therefore did not offend a public policy (Doc. 43, pp. 6-7). Judge Yandle also found that DES's pricing practices were not immoral, unethical, oppressive, or unscrupulous because the Lanes were free to terminate their contract with DES at any time without paying a cancellation fee (*Id.*). Attempting to address the deficiencies, the Lanes propose adding allegations that DES's plan to overcharge consumers is successful because of a lack of transparency in the market, and DES fosters that lack of transparency by hiding from the consuming public the extent to which its variable rates are always substantially higher than market rates (Doc. 45, p. 8). The Lanes also propose adding the allegation that DES systematically uses a transitional variable rate to lull consumers into not noticing their automatic transition to Direct Energy's exorbitant variable rate (*Id.* at 8-9).

Contrary to before, the Lanes have alleged conduct by DES that, taken as true, makes it plausible that DES directly violated a public policy in the Act. The proposed addition that hits closest is the allegation that DES undermines the public policy purpose of the deregulated market by making it impossible for customers to make

informed choices and instead exploits the market's lack of regulatory oversight. This relates back to an already included section that cites public policy from the Act that all consumers should benefit from the lower costs for electricity from the resulting competition and receive sufficient information to make informed choices (Doc. 16, p. 4).

Reading the complaint, the Lanes could have inquired about the variable rates at any time and cancelled their DES contract without a fee if they were unsatisfied with the pricing. This dearth of oppressiveness and lack of choice does not appear to support immoral, unethical, oppressive, or unscrupulous conduct allegations. But the purpose of this stage is to test the sufficiency of the complaint, not to decide the merits by weighing the factors when one of the factors alone is sufficient to state a claim. *See Batson*, 746 F.3d at 830 (plaintiff's claim must satisfy at least one of the ICFA unfairness factors); *see also Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583, 586 (7th Cir. 1989)). The Lanes' proposed amendments to their claim for unfairness in Count I are not futile and amendment is granted.

## Conclusion

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion for Leave to File a Proposed Second Amended Complaint (Doc. 44). The Lanes' ICFA Count I claim for deceptive practices is **DISMISSED without prejudice** and leave to amend their Count I claim for unfairness is **GRANTED**. The Lanes' ICFA Count II claim for an advertising rule violation is **DISMISSED without prejudice**. The

Lanes' claims for breach of contract and breach of implied covenant of good faith and fair dealing in Count III are **DISMISSED with prejudice**. The Lanes have 7 days to file an amended complaint based purely on the ICFA Count I claim for deceptive practices, or they may motion for leave to amend further based on the parameters of this Order.

    **IT IS SO ORDERED.**

    DATED:   December 18, 2020

s/ *Stephen P. McGlynn*  
**STEPHEN P. McGLYNN**  
**U.S. District Judge**
